UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TRAVIS WILLIAM SCHOENDALLER,<br><br>Defendant. | Case No. 1:18-cr-00179-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. OVERVIEW

Pending before the Court is Defendant Travis Schoendaller's Motion to Dismiss Indictment. Dkt. 21. Schoendaller asserts that the indictment in this matter violates his Second Amendment rights. On March 13, 2019, the Court held oral argument and took the motion under advisement. Upon review, and for the reasons outlined below, the Court finds good cause to DENY the Motion.

## II. BACKGROUND

On February 23, 2018, an Idaho State Police trooper stopped Schoendaller for a traffic violation. During the stop, Schoendaller admitted to having firearms in the vehicle. When the trooper performed a records check, it revealed an active protection order against Schoendaller. Schoendaller was arrested and charged with driving on a suspended license and violating 18 U.S.C. § 922(g)(8). A Grand Jury subsequently indicted

Schoendaller for one count of unlawful possession of a firearm in violation of a court order, pursuant to 18 U.S.C. § 922(g)(8).[1]

The underlying court order—a protective order—forming the basis for this charge was entered on September 8, 2017, by a state court magistrate judge in the Circuit Court of the 8th Judicial District in Converse County, Wyoming.

In 2017, Schoendaller, his wife Amber, and their daughter (SS) lived in Idaho. Schoendaller and Amber split in August of 2017, and Amber and SS moved to Wyoming. Amber subsequently petitioned for a protective order against Schoendaller. A hearing

---

[1] 18 U.S.C. § 922(g)(8) provides as follows:

> (g) it shall be unlawful for any person—
>
> . . .
>
> (8) who is subject to a court order that—
>
> (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
>
> (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
>
> (C)
> >  (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
> >  (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury;
>
> . . .
>
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

was held on Amber's petition. Schoendaller received notice of the hearing and attended it by telephone.

During the hearing, the Court heard testimony from Schoendaller and Amber. The magistrate judge stated he was going to grant the protection order but gave Schoendaller the opportunity to stipulate to the entry of the order. Alternatively, the judge stated that he would enter the order with a finding that Schoendaller committed an act of domestic violence. Ultimately, Schoendaller consented to the order. In light of Schoendaller's consent, the judge stated there would be no finding on the record that Schoendaller committed an act of domestic violence. The judge then entered the protection order.

In doing so, the judge checked a box on the order form stating that Schoendaller had consented to the the entry of the order even though he disputes that he committed an act of domestic violence. The judge then ordered Schoendaller to not possess any firearms during the pendency of the protection order which was set to expire on September 8, 2018. The judge also advised Schoendaller that he would be in violation of federal law if found in possession of a firearm while the protective order was active. Schoendaller now argues that because there was no adjudicated finding that Schoendaller committed an act of domestic violence or posed a credible threat to his wife, the indictment under 18 U.S.C. § 922(g)(8) violates his Second Amendment rights.

### III. LEGAL STANDARD

When a statute is challenged on Second Amendment grounds, strict scrutiny or intermediate scrutiny may apply. *District of Columbia. v. Heller*, 554 U.S. 570, 628 n.27 (2008). For a statute to withstand intermediate scrutiny, the Government must

demonstrate a "significant, substantial, or important" objective in enforcing the statute. *United States v. Chovan*, 753 F.3d. 1127, 1139 (9th Cir. 2013). It must then show there is a "reasonable fit between the challenged regulation and the asserted objective." *Id.* Conversely, under strict scrutiny, "the law must advance a compelling state interest by the least restrictive means available." *Bernal v. Fainter*, 467 U.S. 216, 219 (1984).

The Ninth Circuit has explained that whether strict scrutiny or intermediate scrutiny applies in a Second Amendment challenge to a statute depends on two factors: "(1) how close the law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on the right." *Chovan*, 735 F.3d at 1138. The Court finds that intermediate scrutiny applies and denies the motion to dismiss the indictment for the reasons explained below.

### IV. ANALYSIS

A. *Required scrutiny*

The Court finds that section 922(g)(8) does not implicate a core Second Amendment right. In *Heller*, The United States Supreme Court found that strict scrutiny applied to a D.C. statute prohibiting all handgun possession in homes regardless of criminal background. The Court reasoned that the Second Amendment's protection is at its core when it concerns the right of "law-abiding responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635. Schoendaller argues that, because there has never been an official finding that he committed an act of domestic violence or posed a credible threat, he is a "law-abiding responsible citizen" under *Heller*. Thus, concludes Schoendaller, the statute as applied to him implicates his core Second

Amendment rights and strict scrutiny applies.

The Court disagrees with this reasoning. First, Schoendaller has a temporary protective order against him prohibiting him from possessing firearms. When a protective order is entered against an individual, at minimum, a court has found sufficient justification to suspend the Second Amendment rights of the individual. So, although Schoendaller was not found to have violated the law, he has lesser standing before the Court and that excludes Schoendaller from the aforementioned category of persons referenced in *Heller*.

Second, Schoendaller does not challenge the order's constitutionality. Dkt. 26 at 8. That said, even if he had wanted to, he could not because "it is no defense to a prosecution under [§922(g)(8)] that the state restraining order proceedings were unconstitutional." *United States. v. Young*, 458 F.3d 998, 1005 (9th Cir. 2006). Accordingly, by consenting to the order, Schoendaller arguably waived his Second Amendment rights. *See United States v. Reese* 627 F.3d 792, 804 n. 3 (10th Cir. 2010) (finding that defendant Reese—indicted for firearm possession in violation of 922(g)(8)(ii)—"arguably waived his Second Amendment rights" by agreeing to the imposition of the protective order). In essence, Schoendaller concedes it is constitutional for a state court to restrict his right to possess firearms without a specific finding that he posed a credible threat to his wife but also claims his core rights are violated when the federal government indicts him for possessing guns in violation of the order. This argument is not persuasive. Thus, although there is no official finding that Schoendaller committed a crime, his standing before the law is such that his core rights are not

implicated here.

      Finally, the Court finds that the severity of the law's burden on the right is not severe enough to trigger strict scrutiny. Section 922(g)(8) applies only when a domestic violence restraining order "was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate." 18 U.S.C. § 922(g)(8)(A). Further, Section 922(g)(8) does not permanently deprive Schoendaller of his right to possess a firearm. It only applies while he is subject to the protective order. *Id.*

Other Circuit Courts that have addressed the constitutionality of Section 922(g)(8) have also applied intermediate scrutiny. *See United States v. Chapman*, 666 F.3d 220, 226 (4th Cir. 2012); *Reese*, 627 F.3d at 802. In addition, the Ninth Circuit has even applied intermediate scrutiny in cases involving firearm restrictions affecting the public in general——individuals not subject to any allegation of wrong-doing or danger. *See e.g. Jackson v. City and County of San Francisco*, 746 F.3d 953, 968 (9th Cir. 2014) (applying intermediate scrutiny to a statute that regulated handgun storage and ammunition sales of the public in general). The Ninth Circuit has already applied intermediate scrutiny to laws that are more restrictive and burdensome than Section 922(g)(8). In light of the foregoing, the appropriate level of review here is intermediate scrutiny.

  B. *Intermediate scrutiny examination*

      As previously noted, under the intermediate scrutiny standard, the Government must demonstrate a "significant, substantial, or important" objective in enforcing the statute and that there is a "reasonable fit between the challenged regulation and the

asserted objective." *Chovan*, 753 F.3d. at 1139. The Court will address each element in turn.

   1. *The government's objective*

Here, the government asserts that the objective of § 922(g)(8) is to "protect the community from domestic gun violence." In *Chovan*, 735 F.3d at 1139-40, the Ninth Circuit held that it is "self-evident that the government interest of preventing domestic gun violence is important." The Court agrees.

Schoendaller argues that the government interest in this case is broader, namely, to protect the entire community from gun violence. But the language of the statute here clearly demonstrates that the government is attempting to prevent domestic gun violence. Section 922(g) acts as a prohibition on gun possession for people who have orders against them meant to protect intimate partners and their children. The order in this case prohibits the use of physical force against an intimate partner that would "reasonably be expected to result in bodily injury." It is obvious that the objective of an order protecting intimate partners from gun violence is to prevent domestic gun violence. Thus, the government's objective satisfies this first prong of intermediate scrutiny.

   2. *The "reasonable fit" between the statute and the government's objective*

The Court's next task is to determine whether there is a reasonable fit between § 922(g)(8) and the objective of preventing domestic gun violence in Schoendaller's case. *Chovan*, 735 F.3d at 1139. In *Reese*, the Tenth Circuit Court of Appeals found that an indictment for firearm possession in violation of § 922(g)(8) was valid even where the underlying protective order was consented to and there was no finding of credible threat

or act of domestic violence. *Reese*, 627 F.3d at 806. In *Reese*, the court applied intermediate scrutiny to an as-applied Second Amendment challenge to the indictment and found the indictment constitutional. *See id.* at 803-804

In all relevant aspects, Schoendaller's case is essentially the same as *Reese*. Both cases involve an individual who was indicted for gun possession while having a protective order against him that restricted firearm possession. In both cases, the underlying protective order contained no finding of credible threat or act of domestic violence. In both cases, the statute was challenged on as-applied Second Amendment grounds. Therefore, the Court finds that *Reese* is highly relevant and persuasive here.

The *Reese* court found that no finding of domestic abuse or credible threat was necessary to make §922(g)(8) "substantially related" to the government's objective as applied to the defendant. In making that finding, the court reasoned that no factual finding that Reese represented a credible threat to the safety of his wife was necessary to apply §922(g)(8) to Reese because, by consenting to the order, he arguably waived his Second Amendment rights. *Id.* And the order specifically prohibited the use of physical force against his wife, which made the statute apply directly to Reese. *Id.* The court even opined that had they applied strict scrutiny, the indictment would still be constitutional as applied to Reese. *Id.* at 804 n.4. The Court is persuaded by the reasoning behind these findings.

Schoendaller contends that *Reese* is distinguishable from this case because it only involved a facial challenge to § 922(g)(8). Dkt. 26, at 7-8. That is not correct. *Id.* at 800 ("We . . . address Reese's alternative argument . . . that, as applied to *Reese*, [the statute is

unconstitutional]."). In fact, a significant portion of the *Reese* Court's opinion focuses on his as applied challenge, reviews relevant cases, and analyzes the intermediate scrutiny factors. Schoendaller further attempts to distinguish *Reese*, explaining that Reese had a "grievous history of domestic violence." Dkt. 26, at 8. But in fact, none of the alleged conduct discussed in the *Reese* decision was ever adjudicated. Similar to Schoendaller, Reese had no criminal record of domestic abuse but was found with guns in violation of a protective order and indicted.

Finally, Schoendaller claims the Court should see *Reese* as distinguishable because Reese challenged the validity of the underlying protective order and Schoendaller does not do so. It is true that Schoendaller does not challenge the validity of the protective order in this case, but that distinction is of no consequence. The Tenth Circuit in *Reese* did say the district court should not have focused on the underlying order in reaching its determination. *Reese*, 627 F.3d at 804-805. But the Tenth Circuit found that § 922(g)(8) was, nonetheless, constitutional on separate grounds, remanding the case with an order that the district court allow prosecution under the indictment to proceed. *Id.*

Schoendaller also references *United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001), claiming the *Emerson* court only found an indictment under §299(g)(8)(c)(ii) to be valid because Texas state law required that all protective orders include a finding of a credible threat of harm. But the *Emerson* court did not go so far.

In *Emerson*, the court stated that Congress, in enacting Section 922(g)(8)(c)(ii) "proceeded on the assumption that the laws of the several states were such that court orders, issued after notice and hearing, should not embrace the prohibitions of paragraph

MEMORANDUM DECISION AND ORDER - 9

(c)(ii) unless such . . . *were not contested.*" *Id.* at 261 (emphasis added). Here, the prohibitions were not contested. The Wyoming court told Schoendaller of the prohibitions embraced in the order and he did not contest the prohibitions. Nor did he seek to modify or challenge any of the provisions of the order.

The Fifth Circuit continued in *Emerson*: "[W]e suggest . . . that Congress did not have in mind orders issued under a legal system whose rules did not approximate [the minimum standards of finding credible threat] for the issuance of *contested* injunctive orders after notice and hearing." *Id.* at 262. So, in this case, whether the Wyoming judge found there to be a credible threat is irrelevant because Schoendaller received notice and a hearing but did not contest the entry of the protective order.[2] Thus, *Emerson* —while again, not binding— supports the Court's finding that § 922(g)(8)(c)(ii) is reasonably fitted to the government's objective as applied to Schoendaller.

### V. CONCLUSION

The Court finds that because Schoendaller does not dispute the constitutionality of the underlying order, received notice and a hearing, was informed that he could not possess guns under the order, and did not contest the entry of the order, the indictment does not improperly restrict his Second Amendment rights. His indictment under 18 U.S.C. § 922(g)(8), therefore, will not be dismissed.

---

[2] Schoendaller did seek to dismiss the order, but only because he believed the court had no personal jurisdiction over him. Schoendaller was, however, mistaken. As the Wyoming Court found, by appearing and officially consenting to its jurisdiction in the court order, Schoendaller gave the Wyoming court personal jurisdiction.

## VI. ORDER

The Court HEREBY ORDERS:

1. Schoendaller's Motion to Dismiss Indictment (Dkt. 21) is **DENIED**.

2. That a new trial be set for **September 16, 2019, at 1:30 p.m.** in the U.S. Courthouse in Boise, Idaho. The period of time between the prior trial date and the new trial date is deemed EXCLUDABLE TIME under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A) & (B).

3. A new trial readiness conference will be conducted by telephone on **September 3, 2019, at 4:00 p.m.** The Government shall place the call to (208) 478-8391 with opposing counsel on the line.

4. All pretrial motions shall be filed on or before **August 19, 2019.**

DATED: July 1, 2019

David C. Nye
Chief U.S. District Court Judge